May it please the Court, Counsel. There are two issues before this Court today. The first is whether appellate counsel was ineffective for failing to raise a meritorious counsel of choice issue, and the second is whether this Court can reach the merits of the claim because it's been procedurally defaulted. With respect to the first issue, appellate counsel should have realized that a counsel of choice error occurred when the trial court denied privately retained counsel's request for funding of experts on the basis that Oaks was not represented by the public defender. Private counsel was forced to withdraw so that Oaks could access experts that he believed were necessary to the defense of the case, and Oaks was denied his counsel of choice. Had Oaks raised this issue on direct appeal, he would have received a new trial because Illinois law had a long history of protecting a defendant's right to counsel of choice as an absolute right with no finding of prejudice necessary. Had Illinois addressed this problem before? That is, where somebody who's represented by private counsel is seeking publicly funded experts and investigators? At the time of trial, I do not think there was any Illinois case law directly on point. However, the American Bar Association standards in effect at that time provided guidance and cited case law that established just because an indigent defendant was receiving privately retained counsel that was funded by another party, it did not affect his right to expert fees. That's a respectable view. Was it controlling state law or constitutional law at the time? Well, there was constitutional law that a defendant had the right to call experts. In general, yes, but I'm talking about needing to bring together these different threads to say, if I have resources available to me as a defendant, I can decide how much I want to pay the lawyer and then claim public support for the experts and investigators. There was Supreme Court case law that discussed the concept of indigency, which is hardy, and that's cited in our brief, which discussed the fact that just because a criminal defendant is indigent for one purpose doesn't necessarily mean that he is not. Just because he has funds for one service, it doesn't mean he necessarily has funds for another service. Which case is that? It's Hardy v. United States. I believe it's cited in our brief, in our opening brief. And there was other states that had addressed the exact same situation and had issued case law explaining that a criminal defendant's right to expert witness fees if he was indigent was not affected by the fact he had a third party paying his attorney fees. And it makes sense. Sorry, in Hardy you're referring to the footnote comment about bail? Yes, correct. Okay. Yes, it's cited on page 19 of our brief. We recognize that when a counsel of choice violation occurs, this court looks to an adverse effect standard to determine whether or not the defendant has been affected in some negative way by the violation. This court's defined adverse effect as an identifiable difference in the quality of representation or some sort of setback to the defense. We have limited time and a lot of ground to cover. Let's suppose, just bear with me for a minute, suppose you've got the defendant who is indigent has a rich uncle who is willing to spend half a million dollars for the finest defense counsel available. Okay. And makes that money available to counsel. Counsel then comes into court and says, my client is indigent. We want the taxpayers to pay for experts and investigators. And the judge says, no, you're obviously, we're not going to stick the taxpayers with this because resources are available. Is it the defendant's choice as to how those resources should be allocated? Well, I would point out that in this case there was not unlimited resources. I'm asking you the question. Okay. Suppose there are other problems with the facts here, but your theory I think would say that a judge who says no is either violating the indigent defendant's right to taxpayer-supported experts or is forcing a change of counsel against his will. Is that right? I think that the answer is yes, but it would depend on the amount of resources available. There wasn't a dispute here that there wasn't enough resources for both counsel and for witnesses. So it really, in this situation, was in the court's best interest to allow the experts instead of requiring the attorney to withdraw because the county ended up having to pay for both the public defender and the, well, in this case, he didn't use any experts. And that is our other concern is that here there was a true setback to the defense. Winstein came in like a capital defense lawyer, and he knew that he would need a mitigation expert, an investigator, a psychiatrist who he planned to utilize during the guilt-innocence phase of proceedings, and a forensic scientist or a pathologist to help with all the medical documents. Let me put the question this way. The state has told us that we could agree with your position on the merits if we reach the merits, only by creating a new constitutional rule that we cannot do on collateral review. I don't see much by way of clear guidance from the Supreme Court for the situation, either this situation or the hypothetical I gave you where there's even more money available. Correct. Although the state's argument that there is a new rule applies to situations where a defendant is asking the court to appoint counsel, he has no right in that situation to his counsel of choice if he's asking for the court to appoint counsel. That was not the situation here. You seem to be asking for a new rule that says if I am indigent but somehow come in to become a beneficiary of other resources, I get to choose how that's allocated and can draw on public funds to the extent I choose. I think that would be for the court to determine based on a hearing on the amount of resources available. That sounds to me like a new rule of constitutional law. It is not a new rule of constitutional law because there is no request that the court appoint counsel of choice. Here the defendant had retained his counsel of choice, and that counsel was being paid for privately. For example, what if an attorney was agreeing to represent him pro bono? That doesn't mean that he would be denied experts. Right. Counsel, the question that Judge Hamilton asked concerns me as well. Maybe I can try to put it in the statutory language. 2254D says that to grant federal collateral relief in a state conviction, the right in question must be clearly established by the Supreme Court of the United States. What do you point to to show that the Supreme Court itself, by the time of the conviction here, had clearly established that a state was forbidden to say that somebody who had a private lawyer has to pay for private investigative services, too? What case clearly establishes that point? I don't have a case clearly on point. I would say that Wheat and Ake established both the right to witnesses and the right to counsel of choice. As I'm sure you know, the Supreme Court has said it's always possible to boost the level of generality. One might as well say the defendant is entitled to due process of law, but the court insists that the right be made concrete in order to qualify as clearly established by the Supreme Court of the United States. And I am a little worried about what made it concrete. We would rely on the cases cited in our brief, and admittedly there is nothing directly on point where a defendant had privately retained counsel funded by his family and was asking for witness fees because he was indigent himself. And what if, in a different kind of case, the funding comes from the Mexican supplier of the wholesale goods that are being sold in the black market in Chicago? Any different? I think that it would depend on the circumstances of each case here. This was a family. I mean, it's a difficult and interesting problem, and I've dealt with it as a trial judge where in this sort of situation where the lawyer family runs out of money and the lawyer says, gee, I really can't continue as privately retained counsel judge. Will you appoint me now to pay me with public funds the rest of the way? Those kinds of problems arise. It's not clear to me that the constitutional constraints on the judge are very clearly established in those situations. It's undisputed, though, that the defendant does have a right to expert witnesses, and if there aren't enough funds for both an attorney and experts, it doesn't seem right that he should be denied experts because he has the luck to have a family member supporting what it can of his private attorney fees. Okay. I see I'm out of time. Thank you, Ms. Green. Ms. O'Connell. May it please the Court. I'm Assistant Attorney General Erin O'Connell on behalf of the respondent warden. I'd like to start with an issue that wasn't really discussed previously, and that's the fact that this claim was procedurally defaulted. We are actually in a circumstance where 2254D is not going to govern the court's analysis because the state courts were never presented with an opportunity to adjudicate the merits of petitioner's claim, and that's why we're relying on the general principles of Teague v. Lane as opposed to 2254D. But of course we are. We are going through the layers of procedural default. Each procedural default is asserted to be justified by ineffective assistance of counsel, which you keep going through until we reach, one would suppose, De'Vea against Davis, which is now under advisement. No, I guess it's not. It's going to be argued later this month in the Supreme Court, and part of the question for us is should we be trying to anticipate the outcome of De'Vea or should we try to decide this on some other ground? Well, the court, there are two layers of default that petitioner needs to get through. He needs to show ineffective assistance of appellate counsel, and then on top of that he also needs to show, assuming even that Martinez were to apply to this circumstance and the circuits have come out strongly in favor of a rule that says that it does not, even if that applies, he has to. The Supreme Court has granted certiorari in De'Vea to decide whether that is right. Correct. But even assuming that the court were to hold in petitioner's favor on that issue, it's clear that under Martinez he has to show that PC counsel was deficient under the Strickland standard. So he has to go through two layers of showing that he received deficient performance of both his appellate and his post-conviction counsel. And the court could easily deny relief on the basis that his default should not be excused because appellate counsel was not ineffective under Strickland. The merits of this claim are clear. I think the court should look at the brief that counsel filed, which is in the record document 19-14. Counsel did raise 13 claims. It was 69 pages, which at the time would have been an oversized brief, and he would have obtained leave to file that oversized brief. But it's clear from looking at the claims, not just the ones that deal clearly with the death penalty and the constitutionality of the death penalty, but demonstrate a clear focus by appellate counsel on issues that pertain to petitioner's eligibility for the death penalty, even claims that were not so specific. So petitioner was sentenced to death on a claim that he committed knowing murder. Counsel in one of the claims said that the evidence was insufficient to show knowing murder. If he had prevailed on that claim, then he wouldn't have been eligible for the death penalty. A second finding that was necessary for the death penalty was that the murder was brutal or heinous. And he had a number of claims that were directed at the sufficiency of the evidence on that point, the procedures that were used by the court to make its finding of eligibility. So we can see a coherent strategy adopted by appellate counsel in this case that was plainly reasonable, and that was to show that petitioner's death sentence was inappropriate, as opposed to going back to issues pertaining to choice of counsel. Just to interrupt a minute, because I was curious about this, about what Oakes did to this Jerry, three-year-old, and Oakes testified, right? He did. And when Oakes testified, did all of this, I'll call it bluntly torture to Jerry, happen in two days, or was it over a more extended period of time? Most of the acute injuries would have occurred over the two days, because that was the period in which he was present along with the mother in the apartment with the child. They couldn't, the medical examiner, for example, couldn't date each of the injuries in terms of how recently it had occurred, other than to say that it would have been within a week or two, that they were acute injuries. Well, it sounded to me with his own description of what he said happened accidentally, that the child couldn't have lived. That's correct. His testimony, furthermore, failed to account for the myriad injuries that he had suffered to different parts of his body. I think a lot of the testimony. Three years old, right? Correct. And so he admitted, and this came out through his statements, where he was challenged on each point. He would come up with an explanation as to how that injury might have occurred. He was unable at any point to explain how the child had broken his clavicle, snapped it in half, for example. He was unable to account for a lot of the child's bruises. So his explanations were incomplete, and they were, furthermore, completely implausible. There were a number of expert witnesses in the case who were unanimous in their testimony that for a child to suffer the type of head injury that he did would require a tremendous amount of force be applied to the child's head, causing it to hit a hard object and for there to be some shaking involved. Petitioner really has, to this day, not given a coherent accounting of how all of these injuries could have occurred, even taking as true his own story in which he became angered that the child had wet his pants, and therefore he threw the child across the room, but it was only an accident that he missed the mattress that was across the room. Okay, that's enough. So then to come back to Petitioner has to show ineffective assistance of appellate counsel, I would touch just briefly on the fact that this is defaulted and that Martinez has to apply, and that therefore, even assuming it applies, Petitioner has to show that his post-conviction counsel was deficient. He failed to make that showing as well. Like in direct appeal, his post-conviction counsel raised myriad claims. So the theory, if I understand it, seems to be, well, we have to at least peek at the merits here in order to weigh the strategic choices, the selection of issues made at both levels, right, post-conviction and appellate counsel. And there's a kind of extreme version of that argument that says if I can find one of those 27 arguments or one of those 13 arguments that's noticeably weaker than this choice of counsel claim would have seemed at the time, then this is ineffective. Do you think that's the right way to look at this? I don't think that that standard is fair to appellate counsel. The court, usually in cases where the court has been looking at appellate counsel's performance, it's been a very limited class of claims. So, for example, appellate counsel raises three claims, and there's one other claim that Petitioner argues that appellate counsel should have chosen. But here it's not fair to just pick out, for example, claims that had no chance of success because they were barred by Illinois Supreme Court precedent, such as the constitutionality of the death penalty. It's not fair to pick those out and say, well, this claim was stronger than that, then appellate counsel must have been ineffective. Well, in the capital context, with the extraordinary consequences of forfeiture, there's every incentive to raise all kinds of improbable-looking claims because over the course of litigating a capital case, it's very difficult to predict what changes there might be in U.S. Supreme Court law or state law. And that is correct. It is certainly common practice for an appellate counsel to argue that the death penalty is unconstitutional, whereas a client has been sentenced to death even in the face of adverse precedent. Here the court does have to consider, too, that it's not a circumstance in which appellate counsel raised one issue and then had ample space in a possible brief to raise another non-frivolous issue. This was a case where counsel had already filed an oversized brief, and therefore there really was no room for him to just tack on an additional issue. And counsel's performance has to be judged based on the precedents that were available to him at the time he was making his decision. I think Petitioner has conceded that there was no clear precedent from the Illinois courts as to the proper construction of the statute. The trial judge's reading of the indigency statute to require both counsel and experts be appointed through the court was a reasonable one based on the text of the rule. So there was not clear precedent for him to rely on to say that that was an abuse of discretion. And there's also not a clear U.S. Supreme Court case that shows that this was somehow a violation of choice of counsel. Is it clear what would happen now? You've got the bail case, or I'm sorry, the pro bono counsel case, right? I don't think the precise circumstances have come up. The Illinois courts, at least the appellate court, has held that where pro bono counsel is involved, experts should be available. And that more closely even fits with the choice of counsel issue, because if counsel is acting pro bono, then that's counsel that a client can afford, as opposed to this fairly unusual circumstance where even though counsel has appeared on behalf of the petitioner, it's clear from the record that petitioner and his family would not have been able in the long term to retain his services. So we would ask the court to affirm the judgment of the district court denying habeas relief. Thank you, Ms. O'Connell. Anything further, Ms. Green? The first point I'd just like to make briefly is that this was the aunt's choice, that she wanted to spend her money on defense counsel. This wasn't Oak's choice. He was indigent. He had no say in the matter. The second point is I just want to redirect the court to the fact that the issue here is ineffective assistance of appellate counsel, and if he had raised the issue in his brief, he would have won under Illinois case law regarding the right to counsel of choice. Third, I'd like to respond to the respondent's argument that appellate counsel's strategy was sound because he raised numerous issues. He failed to raise a winning issue, and that is ineffective assistance of appellate counsel, and the same is true of post-conviction counsel. How does that fit with Strickland's direction not to use hindsight to evaluate performance? I don't think hindsight is required in this case. I think that a review of the record, which showed the counsel of choice violation, would have established that that was the valid issue to raise. There is no case law that supports respondents' interpretation of the statute allowing for expert witness fees, that you have to have an appointed attorney in order to access expert witness fees. There's no support for that, and it's an illogical reading of the statute. And my last point is that it's completely speculative that the family would have needed to fire Winstein and retain the public defense. Thank you, counsel. Thank you. The case is taken under advisement.